# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

AMERICAN FIDELITY
ASSURANCE COMPANY,

      Plaintiff,

v.                                                        Civ. No. 17-979 GBW/CG

RICHARD HUMPHREYS,
*as Personal Representative of the Estate*
*of George Bernard Humphreys*, *et al.*,

      Defendants.

## **ORDER ENTERING INTERPLEADER AND GRANTING SUMMARY JUDGMENT**

THIS MATTER is before the Court on Plaintiff American Fidelity Assurance Company's Motion to Interplead Funds, for an Award of Attorney's Fees and Costs and for Dismissal (*doc. 38*) and Defendant Richard Humphreys' Motion for Summary Judgment (*doc. 35*).

Though Defendant Richard Humphreys initially indicated his opposition to Plaintiff's Motion, *see doc. 38* at 5, neither defendant ultimately elected to file a written response.  However, Plaintiff and Defendant Humphreys subsequently reached an agreement regarding both the granting of the Motion and the award of attorney's fees. As for Defendant Humphreys' Motion for Summary Judgment, Plaintiff expresses no

opinion regarding the ultimate disposition of the case and asks only to interplead the funds. *See doc. 37*. For the reasons that follow, both Motions are GRANTED.

I.  **Background**

The relevant facts are not in dispute. Underlying this action is the life insurance policy of George Bernard Humphreys, who died on February 20, 2017. *Doc. 38* at 3. George Humphreys carried a life insurance policy with Plaintiff American Fidelity for a total benefit of $100,858.44. *Id*. at 5. At the time of Mr. Humphreys' death, the listed beneficiaries of the policy were Helen Humphreys (primary) and Brenda Evans (contingent). *Id*. at 1. Helen Humphreys, Mr. George Humphreys' wife, predeceased him on November 20, 2014. This initially led American Fidelity to identify Brenda Evans as the recipient of the policy benefit. *See doc. 1-6*.

However, American Fidelity was soon alerted to the possibility of competing claims to the proceeds. Richard Humphreys, Mr. George Humphreys' biological son, alleges that his father completed and mailed a beneficiary change form in the spring of 2015, following Ms. Humphreys' death. He further alleges that this completed beneficiary change form listed the Estate, not Brenda Evans, as the primary beneficiary. *Doc. 38* at 2. American Fidelity initiated the current suit on September 26, 2017, with the stated intention of protecting itself from double or multiple liability. *Doc. 1* at 2.

It has subsequently come to light that Ms. Evans died on February 1, 2018 (*see doc. 16*), and that her only surviving heir appears to be her brother, Floyd Michael Ison

(*doc. 38* at 2). Accordingly, Plaintiff amended its Complaint to name Mr. Ison as a defendant. Mr. Ison has disclaimed and assigned all interest in the proceeds. *Doc. 32*. Because Ms. Evans' will was never probated, Plaintiff also named John/Jane Does 1–5, the other possible unknown claimants to Brenda Evans' estate, as defendants. Plaintiff served them by publication in both Artesia, New Mexico and Lubbock, Texas, Ms. Evans' former places of residence. *Docs. 33*, *34*. Publication garnered no response.

Plaintiff now moves to interplead the funds into the Court registry, minus its attorney's fees and costs. It also requests dismissal from the case with prejudice and an injunction prohibiting further related claims against American Fidelity by any of the claimants.

## II.     Interpleader

Plaintiff filed the operative First Amended Complaint in Interpleader on August 1, 2018, invoking interpleader under Federal Rule of Civil Procedure 22.[1] *Doc. 28*. Interpleader allows a disinterested plaintiff to settle disputes about property ownership by joining possible claimants as defendants to a lawsuit. *See Aviva Life & Annuity Co. v. White*, 772 F.3d 634, 639–40 (10th Cir. 2014). Rule 22 states that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1).

---

[1] There are two types of interpleader, rule and statutory. *See Primerica Life Ins. Co. v. Montoya*, 2018 WL 3068059, at *2 (D.N.M. June 21, 2018) (unpublished). Plaintiff has invoked rule interpleader, but for purposes of the issues discussed in this Order there is no meaningful difference between the two.

3

Interpleader actions are typically resolved in two stages. *Primerica Life Ins. Co. v. Montoya*, 2018 WL 3068059, at *3 (D.N.M. June 21, 2018) (unpublished) (citing *United States v. High Tech. Prods.*, 497 F.3d 637, 641 (6th Cir. 2007)). First, the court determines whether interpleader has been properly invoked. Interpleader is properly invoked when the court has jurisdiction and the stakeholder is "actually threatened with double or multiple liability." *High Tech. Prods.*, 497 F.3d at 641 (citing 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1714 (3d ed. 2001)). "If a court determines that the plaintiff-stakeholder properly invoked interpleader and has no interest in the stake, then it may dismiss the stakeholder from the proceedings before moving to the second stage." *Primerica*, 2018 WL 3068059, at *3 (citing *Commercial Nat'l Bank v. Demos*, 18 F.3d 485, 487 (7th Cir. 1994); *In re Millennium Multiple Employer Welfare Ben. Plan*, 772 F.3d 634, 639 (10th Cir. 2014)). The court may also "issue an order…enjoining the parties from prosecuting any other proceeding related to the same subject matter." *High Tech. Prods.*, 497 F.3d at 641 (quoting 7 Wright, Miller, & Kane, *supra*, at § 1714). At the second stage, "the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes." *Primerica*, 2018 WL 3068059, at *3 (internal quotation marks omitted) (quoting *High Tech. Prods.*, 497 F.3d at 641).

At this first stage of the interpleader process, the Court finds that Plaintiff is a disinterested stakeholder and has properly interpleaded all parties with a possible

4

claim to the policy benefit. The Court is also satisfied, given the confusion over the proper beneficiary, that Plaintiff was threatened with double or multiple liability sufficient to justify Rule 22 interpleader. The Court will therefore dismiss Plaintiff from the action, allow Plaintiff to interplead the funds, and issue an injunction preventing participating parties from bringing further actions against Plaintiff related to this matter.

In its Motion to Interplead, Plaintiff also requested an award of its attorney's fees and costs in the amount of $22,734.09. *Doc. 38* at 5. "The award of fees and costs to an interpleader plaintiff, or 'stakeholder,' is an equitable matter that lies within the discretion of the trial court." *Transamerica Premier Ins. Co. v. Growney*, 70 F.3d 123, at *1 (10th Cir. 1995) (unpublished table opinion). Defendant Humphreys filed no response, which the Court would ordinarily construe as consent to grant the Motion. *See* D.N.M.LR-Civ. 7.1(b). However, subsequent to the filing of Plaintiff's Motion, the parties contacted the Court having reached an agreement as to attorney's fees and costs. Plaintiff agreed to accept, and Defendant Humphreys agreed to surrender, an award in the amount of $15,000. The Court in its discretion sees no reason not to honor the parties' mutual agreement, given its finding, *see* Section III, *infra*, that Defendant Humphreys is the proper owner of the policy benefit.

5

### III. Entitlement to the Humphreys Policy Benefit

Having addressed the first stage of interpleader, it remains only to determine the rights of the defendants with respect to the interpleaded property.

The Court agrees with Plaintiff that New Mexico law controls this question. *See doc. 43*. A federal court exercising diversity jurisdiction applies the substantive law of the state in which it sits—in this case, New Mexico. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). "[T]he policy of New Mexico is to interpret insurance contracts according to the law of the place where the contract was executed." *Shope v. State Farm Ins. Co.*, 122 N.M. 398, 400 (1996). While this general rule of *lex loci contractus* is sometimes outweighed by "fundamental" countervailing interests, *see id.* at 400, no such interests appear here. Because the contract was issued and signed in Artesia, New Mexico, the decedent's place of residence, *see doc. 43* at 2, New Mexico law applies by default, eliminating the public policy considerations that sometimes arise when applying another state's law. In New Mexico, parties "can choose by contract a law to govern the performance and enforcement of contractual arrangements between them." *Nez v. Forney*, 109 N.M. 161, 163 (1989). But the life insurance policy signed by George Humphreys contains no choice-of-law provision. *See id.*; *doc. 43-1*. In short, New Mexico state law clearly determines ownership of interest in the Humphreys policy benefit.

Because none of the current parties to the litigation dispute Defendant Richard Humphreys' claim to the proceeds on behalf of George Humphreys' Estate, the critical

6

question is whether any other parties exist who have not been properly noticed and might have a legitimate claim to the policy benefit. At the time of George Humphreys' death on February 20, 2017, either Brenda Evans or the Estate was legally entitled to the proceeds. Helen Humphreys, the primary beneficiary, was already deceased, and Brenda Evans was listed as the contingent beneficiary on the policy in Plaintiff's possession. *See doc. 38* at 1. If George Humphreys succeeded in effecting a change of beneficiary as Defendant Richard Humphreys claims, the Estate was the primary beneficiary according to the new form. *See doc. 38* at 2. In the event of the deaths of both listed beneficiaries, the default beneficiary was the Estate.[2] Therefore, the only possible non-noticed parties would be heirs of the now-deceased Brenda Evans.

To this Court's knowledge, Brenda Evans' sole heir is her brother Floyd Michael Ison, who has signed an affidavit to that effect. *See doc. 32*. However, Ms. Evans' will was never probated. *See doc. 38* at 3. Recognizing the possible existence of other heirs with a claim to the life insurance benefit, Plaintiff effected notice by publication in the Lubbock Avalanche-Journal (*doc. 34*) and the Artesia Daily Press (*doc. 33*). For the following reasons, the Court finds that Plaintiff's notice by publication was sufficient to satisfy the requirements of due process and other applicable law.

---

[2] The insurance contract reads: "If at the time of the Insured's death, there is no beneficiary then living, the proceeds will be payable to the Estate of the Insured." *Doc. 43-1* at 5. However, Brenda Evans was indisputably alive at the time of George Humphreys' death, *see doc. 16*, meaning her interest in the benefit vested at that time assuming George Humphreys did not succeed in changing the listed beneficiaries prior to his death.

The Federal Rules of Civil Procedure permit service on an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). The New Mexico Rules of Civil Procedure provide:

> Upon motion, without notice, and showing by affidavit that service cannot reasonably be made as provided by this rule, the court may order service by any method of combination of methods, *including publication*, that is reasonably calculated under all of the circumstances to apprise the defendant of the existence and pendency of the action and afford a reasonable opportunity to appear and defend.

NMRA 1-004(J) (emphasis added).

There are also federal constitutional constraints on method of service. When providing notice of legal action, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *United States v. 51 Pieces of Real Prop.*, 17 F.3d 1306, 1316 (10th Cir. 1994) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)). "[N]otice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962).

In this case, Plaintiff's diligent research was unable to verify the existence, let alone the identities or addresses, of any additional potential claimants. *See doc. 38* at 3. Indeed, Mr. Ison's sworn affidavit states that he is the "sole and only surviving heir of Brenda Evans," which provides good reason to believe that no additional claimants

8

exist. *Doc. 32*. Under these circumstances, the Court finds that Plaintiff's notice by publication for a period of three consecutive weeks was sufficient to satisfy both New Mexico law and the federal Constitution.

Therefore, the final question is whether Floyd Michael Ison successfully assigned his interest in George Humphreys' life insurance benefits to the Estate. Mr. Ison's filing is titled "Acceptance of Service and Disclaimer," but it appears to contain both a disclaimer and an assignment. *See doc. 32*. New Mexico has adopted the Uniform Disclaimer of Property Interests Act. *See* N.M. Stat. Ann. § 45-2-1104 (2012). Under New Mexico law, therefore, the effect of disclaimer is as follows:

> (3) If the instrument does not contain [a provision providing for the disposition of a disclaimed interest],[3] the following rules apply:
>
>> (b) If the disclaimant is an individual…the disclaimed interest passes as if the disclaimant had died immediately before the time of distribution.

N.M. Stat. Ann. § 45-2-1106 (2012). Therefore, if Mr. Ison successfully *disclaimed* his interest in the Humphreys policy benefit, his intestate heirs or beneficiaries would become potential claimants in this suit.

However, within the same document—indeed, within the same sentence—Mr. Ison also "assign[ed] any interest which he may have in the insurance policy to the

---

[3] George Humphreys' life insurance policy contains no such provision. It provides only that "[i]f at the time of the Insured's death, there is no beneficiary then living, the proceeds will be payable to the Estate of the Insured." *Doc. 43-1 at 5*. It does not address the effect of disclaimer by a beneficiary.

9

Estate of George Bernard Humphreys, deceased." *Doc. 32*. A successful assignment would transfer any interest held by Mr. Ison to the Estate.

The New Mexico Statutes specifically state that "[a] disclaimer made under the Uniform Disclaimer of Property Interests Act is not a transfer, assignment or release." N.M. Stat. Ann. § 45-2-1105 (2012). Mr. Ison's filing must therefore be *either* a disclaimer or an assignment, but it cannot be both. A legal assignment is effected where there exists "evidence of an intent to assign or transfer the whole or part of some specific thing, debt, or chose in action and the subject matter of the assignment must be described sufficiently to make it capable of being readily identified[.]" *Russell v. Texas Consol. Oils*, 120 F. Supp. 508, 512 (D.N.M. 1954). "The meaning of an assignment is to be determined with reference to the intention of the drafter at the time the agreement was made." *Benton v. Albuquerque National Bank*, 103 N.M. 5, 10 (N.M. Ct. App. 1985). Where possible, that intent "is to be gleaned…from the document itself." *Id*. (citation omitted).

Despite the superficial ambiguity of his language, Mr. Ison's intent is clearly expressed in the document itself. Mr. Ison intended to assign all interest in the Humphreys life insurance policy to the Estate. *See doc. 32* ("Defendant…assigns any interest which he may have in the insurance policy to the Estate of George Bernard Humphreys, deceased, and requests that the case be dismissed as to him and the Estate of Brenda Evans, deceased"). Both his intent and the interest to be assigned are

10

specifically described which creates a valid assignment under New Mexico law. It is also clear that the word "disclaim" in his filing was used not in the strict legal sense, but rather according to its meaning in ordinary language (to "repudiate" or "disavow" his interest).[4] Moreover, because this phrase creates a legally effective assignment, it cannot simultaneously create a legally effective disclaimer. *See* N.M. Stat. Ann. § 45-2-1105 (2012). The Court therefore adheres to New Mexico law by giving effect to Mr. Ison's obvious intent.

At the time of George Humphreys' death, only the Estate or Brenda Evans could have been entitled to the policy proceeds. Because Mr. Ison, Ms. Evans' sole known heir, has assigned his interest to the Estate, and because all other potential heirs of Ms. Evans received sufficient notice of these proceedings, there is no need to decide whether George Humphreys successfully effected a change of beneficiary prior to his death. The Estate is entitled to the full policy benefit.

**IV.   Conclusion**

For the foregoing reasons, Plaintiff's Motion to Interplead Funds, for an Award of Attorney's Fees and Costs and for Dismissal (*doc. 38*) and Defendant Richard Humphreys' Motion for Summary Judgment (*doc. 35*) are both GRANTED.

---

[4] *Disclaim Definition*, Oxford English Dictionary Online, *available at* http://www.oed.com/view/Entry/53755?isAdvanced=false&result=2&rskey=25LSEN& (last visited Feb. 6, 2019).

Plaintiff American Fidelity Assurance Company is DISMISSED from the case and ORDERED to pay the total policy benefit in the amount of $100,858.44, minus attorney's fees and costs in the amount of $15,000.00, to Richard Humphreys, as Personal Representative of the Estate of George Bernard Humphreys.

All defendants are permanently ENJOINED from instituting any proceeding, in state or federal court, against Plaintiff arising out of or relating to the George Bernard Humphreys life insurance policy.

The case is hereby DISMISSED WITH PREJUDICE.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**